# STONE *v.* PUPIN.

PATENTS; INTERFERENCE; DISCLOSURE IN APPLICATION.

1. The decisions of the expert tribunals of the Patent Office as to the sufficiency of the disclosure in an original application to support the invention defined in the counts of the issue of an interference, will be accepted as conclusive by this court in considering the question of priority of invention (*following* Ostergren v. Tripler, 17 App. D. C. 557, and Schupphaus v. Stevens, id. 548), especially where the art to which the invention belongs is a very abstruse one; *following* In re Beswick, 16 id. 345.
2. The fact that an invention oversteps the boundary of pre-existing knowledge, both as to structure and scientific principles, warrants a liberal view of the scope of the descriptive specifications rather than a narrow and restrictive one.

No. 191. Patent Appeals. Submitted January 17, 1902. Decided March 5, 1902.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.      *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. William W. Swan* and *Mr. Philip Mauro* for the appellant.

*Messrs. Ewing, Whitman & Ewing, Mr. Thomas Ewing, Jr.,* and *Mr. Vernon M. Dorsey* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an interference case involving claims to priority of invention of an improved system of multiplex telegraphy. The invention lies in the arrangement of the receiving-stations in the application of electrical resonance in the

art of selective or multiplex signaling, and is embodied in the issue defined in two counts as follows:

" 1. The method of distributing the electrical energy of periodic currents which consists in developing a number of effective currents of different frequencies independently upon a single line and conveying the several energies of these currents each selectively to a separate electrical translating device.

" 2. A system of distribution of electrical energy comprising a main line, means for independently developing effective electro-motive forces of different frequencies thereon, branch lines connected with the main line each having its self-induction and capacity so related as to be permeable to alternating currents of a given frequency, and an electrical receiving device in each branch line."

There were three independent claimants in the case when the interference was declared, namely, Pupin, Stone, and Hutin & Leblanc. The order of their applications as filed in the Patent Office is the following: Pupin, February 23, Stone, April 4, and Hutin & Leblanc, May 9, 1894.

Hutin & Leblanc remained in the case until the final decision of the Commissioner of Patents from which they took no appeal.

Pupin made an amendment of his specifications in March, 1895, and Stone thereafter moved to have him declared the junior party in accordance with a practice sometimes pursued in the Patent Office. Shortly thereafter, Stone filed an additional motion to dissolve the interference. Both motions were founded on the ground that the amendment introduced new matter constituting an entire departure from the invention originally claimed.

These motions were heard by the primary examiner who had declared the interference. In the beginning of an elaborate opinion, he stated that there was great difficulty in determining the question presented, " occasioned by the fact that the issues of the interference relate to and cover an art which from its technological side involves a radical departure from previous electrical systems, and which from

its theoretical side utilizes electrical principles which at the date of these respective inventions were but little understood, and are even now not worked out in detail or rigorously apprehended."

Coming then particularly to the invention of the issue he styled it one " which not only oversteps the boundary of preexisting knowledge in the matter of the concrete devices and operations employed, but in its theoretical aspect goes well beyond the obvious application of known scientific principles to the production of new results and systems."

His conclusion was that there was no foundation for charging Pupin with changing his claims from one specific invention to another, hence the motion to dissolve was overruled. But because his amendment " omitted a limitation from his claims and from his description, and has set forth his invention in a broader light, both in the specifications and in the claims," he granted the motion to make Pupin the junior party, thereby shifting the burden of proof. This, in his opinion, was the necessary result, of broadening " his claims from a specific invention to a more generic statement of the invention."

No appeal was taken from this decision and testimony was taken in the order thereby indicated.

A number of experts were examined on the question whether the original application of Pupin disclosed the invention of the issue; and other evidence was introduced relating to the conception, disclosures, and experimentation of the parties. The entire record consists of nearly seventeen hundred pages.

The examiner of interferences discussed the evidence at length, and finding no material discrepancy between the original and amended specifications, awarded priority to Pupin as the first to conceive, and reduce to practice — giving each party constructive reduction only through application filed.

The examiners-in-chief, to whom an appeal was taken by both of the losing parties, show in their decision a careful and thoughtful examination of the terms of Pupin's original

specifications, and, as stated, had " no difficulty in finding therein a complete disclosure of the invention of each issue."

Passing then to the consideration of the evidence of his conception, they said:

" Pupin's evidence impresses us as truthful; it is consistent with the probabilities of the case, and is corroborated by O'Connor as to the actual construction of a model device which disclosed all of the elements called for by the second count of the issue, and which was undoubtedly operated in the manner called for by the first count, even though the results were not so satisfactory as to entitle the device to be regarded as a reduction to practice. We regard the evidence sufficient to prove that Pupin had a conception of the invention of both counts of the issue in 1890, and that he constructively reduced the invention to practice by the filing of his application February 23, 1894."

Upon a review of the evidence on behalf of Stone and Hutin & Leblanc, they concluded that their conceptions followed that of Pupin, and that neither had done anything practically toward adapting and perfecting the invention for use.

On the other hand, they found that Pupin had " experimentally worked out quantitative methods of measurement of circuits containing localized induction and capacity, determined the effect of iron in the cores on such circuits, and benefited the public by the disclosure of his work."

The assistant Commissioner before whom the case came on further appeal, agreed with the examiners-in-chief, that Pupin " was the first to conceive the invention, the first to constructively reduce it to practice, and the only one to actually reduce it to practice," and, therefore, affirmed their decision.

In reaching a conclusion he did not content himself with adopting their decision but carefully re-examined the questions involved, reviewing particularly the evidence relating to the conception and development of the invention by each of the respective claimants.

The chief weight of the argument on this final appeal, in which Stone is the sole appellant, has been directed to the contention founded on the insufficiency of Pupin's original specifications.

In respect of this we must accept the decisions of the tribunals of the Patent Office as conclusive. *Ostergren* v. *Tripler,* 17 App. D. C. 557, 559; *Schupphaus* v. *Stevens,* Idem, 548, and cases cited.

The fact that " the issues deal with an invention which not only oversteps the boundary of pre-existing knowledge in the matter of the concrete devices and operations employed, but in its theoretical aspect goes well beyond the obvious application of known scientific principles to the production of new results and systems " as declared by the primary examiner in disposing of the motions before referred to, would seem rather to warrant a liberal view of the scope of the descriptive specifications, than a narrow and restrictive one. Moreover, the abstruseness of the art to which the invention belongs renders it all the more obligatory to accept the concurring decisions of the expert tribunals of the Patent Office. *In re Beswick's Appeal,* 16 App. D. C. 345, 350; 91 O. G. 1436.

We see no good purpose that would be served by again reviewing the evidence relating to the efforts of Pupin, after conception and in the course of his actual reduction to practice.

This has been fairly done in the decisions appealed from and nothing material could be added thereto. Upon a careful consideration of the evidence, we entirely concur in their conclusions.

Nothing remains but to *affirm the decision appealed from, and to order this decision with the proceedings herein to be certified to the Commissioner of Patents as required by law;* and the same is accordingly done.